IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LEAGUE OF WILDERNESS
DEFENDERS - BLUE MOUNTAINS
BIODIVERSITY PROJECT,
CASCADIA WILDLANDS PROJECT,
KLAMATH-SISKIYOU WILDLANDS CENTER,
and NORTHWEST ENVIRONMENTAL
DEFENSE CENTER,
        Plaintiffs,

                                          Civil No. 04-639-HU

   v.

                                          OPINION AND
UNITED STATES FOREST SERVICE,   O R D E R
        Federal Defendant,

and

D.R. JOHNSON LUMBER CO., an Oregon
corporation; COLUMBIA HELICOPTERS, INC.,
An Oregon corporation,
        Defendant-Intervenors.
_____

Christopher G. Winter

PAGE 1 - OPINION AND ORDER

Ralph O. Bloemers
Cascade Resources Advocacy Group
917 S.W. Oak Street, Suite 417
Portland, Oregon   97204

Susan Jane Brown
Stephanie Parent
Pacific Environmental Advocacy Center
10015 S.W. Terwilliger Blvd.
Portland, Oregon   97219
    Attorneys for Plaintiffs

Karin J. Immergut
United States Attorney
Stephen J. Odell
Assistant U.S. Attorney
1000 S.W. 3rd Avenue, Suite 600
Portland, Oregon   97204

Thomas L. Sansonetti
Assistant Attorney General
Brian C. Toth
Paul D. Barker, Jr.
Trial Attorneys
United States Department of Justice
Environmental and Natural Resources Division
General Litigation Section
Ben Franklin Station
P.O. Box 663
Washington, D.C.   20044
    Attorneys for Federal Defendants

Scott W. Horngren
Julie A. Weis
Haglund Kirtley Kelley & Horngren, L.L.P.
1800 One Main Place
101 S.W. Main Street
Portland, Oregon   97204-3226
    Attorneys for Intervenor-Defendant D.R. Johnson Lumber Company
    and Intervenor-Defendant Columbia Helicopters.

HAGGERTY, Chief Judge:

PAGE 2 - OPINION AND ORDER

Plaintiffs in this case sought an injunction to temporarily suspend the implementation of federal defendant's Monument Fire Recovery Project on the Malheur National Forest pending a resolution of the merits of this case. On May 21, 2004, this court denied plaintiffs' Motion for a Temporary Restraining Order and scheduled argument on plaintiffs' Motion for Preliminary Injunction. The parties filed additional briefing, argument was heard, and the motion for the preliminary injunction was taken under advisement.

Subsequent to this hearing, Judge Hogan denied a Motion for Temporary Restraining Order and Preliminary Injunction in *Oregon Natural Resources Council Fund v. Goodman*, Cv. No. 04-593-CO (D. Or. June 22, 2004) (*ONRC Fund*). Although plaintiffs contended after that ruling that Judge Hogan's ruling was inapplicable in this case, *see* Plaintiffs' Response to Federal Defendant's Notice of Recent Authority at 2, the two cases raised similar issues, and plaintiffs and the federal defendants submitted supplemental briefing over the following several months.

Acknowledging that the logging at issue in this litigation has been completed, plaintiffs now move to consolidate their Motion for a Preliminary Injunction with the merits of the case pursuant to Federal Rule of Civil Procedure 65(a)(2) for purposes of obtaining declaratory relief. Doc. # 87. Plaintiffs also move to voluntarily dismiss without prejudice their First, Third, Fourth, Seventh and Eighth Claims. *Id*.

**QUESTIONS PRESENTED**

The pending motion for preliminary injunction was rendered moot when the logging at issue was completed. Nevertheless, this Opinion and Order formalizes this court's denial

of that motion, and addresses plaintiffs' new Motion to Consolidate and to Voluntarily Dismiss Without Prejudice their Second, Fifth, Sixth, and Ninth Claims.

## BACKGROUND

The salvage logging at issue pertains to timber damaged in what is known as the "Monument Fire" on the Malheur National Forest. The United States Forest Service (Service) issued a Final Environmental Impact Statement (FEIS) pertaining to this salvage project. The plaintiffs contend the FEIS is inadequate in several ways, emphasizing allegations that the FEIS fails to maintain viable populations as required under the National Forest Management Act (NFMA) and relies improperly upon the use of a habitat model that is inapplicable to post-fire projects.

The focus at the preliminary injunction hearing was whether the Service's reliance upon that model was likely to be found arbitrary and capricious. Plaintiffs argued that the Service violated NFMA by (1) failing to insure the scientific integrity of its FEIS because it relied upon the untested habitat model; (2) failing to maintain the necessary cavity excavating management indicator species (MIS) in the planning area; (3) failing to fully address the cumulative impacts of past, present, and reasonably foreseeable future activities in the Monument Fire Recovery planning area; (4) failing to disclose and analyze opposing scientific information; and (4) misapplying mortality guidelines.

## PROCEDURAL BACKGROUND

The National Environmental Policy Act (NEPA) requires federal agencies to prepare a detailed Environmental Impact Statement (EIS) for all "major Federal actions significantly affecting the quality of the human environment . . . ." 42 U.S.C. § 4332(2)(C). NEPA

"ensures that the agency . . . will have available, and will carefully consider, detailed information concerning significant environmental impacts; it also guarantees that the relevant information will be made available to the larger [public] audience . . . ." *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989).

The purpose and intent of NEPA is to foster better decision-making and to facilitate informed public participation for actions affecting humans and nature. 42 U.S.C. § 4321; 40 C.F.R. § 1501.1(c). The Ninth Circuit recognizes that:

> NEPA imposes a procedural requirement that an agency must contemplate the environmental impacts of its actions. *Inland Empire Pub. Lands v. United States Forest Serv.*, 88 F.3d 754, 758 (9th Cir. 1996) (finding that NEPA is concerned with the process of disclosure, not any particular result). NEPA "ensures that the agency. . . will have available, and will carefully consider, detailed information concerning significant environmental impacts; it also guarantees that the relevant information will be made available to the larger [public] audience"(citations omitted).

*Idaho Sporting Congress v. Thomas*, 137 F.3d 1146, 1149-50 (9th Cir. 1998).

A court reviewing an EIS must make a pragmatic judgment as to whether the EIS promoted informed decision-making and public participation, without substituting its judgment for that of the agency concerning the wisdom or prudence of a proposed action. *California v. Block*, 690 F.2d 753, 761 (9th Cir. 1982). Courts should afford agencies wide discretion to define the purpose of a project. *Friends of Southeast's Future v. Morrison*, 153 F.3d 1059, 1066 (9th Cir. 1998) (quotation omitted).

An EIS should be upheld if its discussion of the significant aspects of the probable environmental consequences is reasonably thorough. *Id.* at 1062-63 (citation omitted). A court's review should end once it is satisfied that the proposing agency took a hard look at a

decision's environmental consequences, and the court should not "fly-speck" the EIS for inconsequential deficiencies. *Id*. at 1063 (citations and quotations omitted).

**STANDARDS**

The court may issue a preliminary injunction under the traditional test used by the Ninth Circuit "if it finds that (1) the moving party will suffer irreparable injury if the relief is denied; (2) the moving party will probably prevail on the merits; (3) the balance of potential harm favors the moving party; and (4) the public interest favors granting relief." *Cassim v. Bowen*, 824 F.2d 791, 795 (9th Cir. 1987) (citations omitted).

Under an alternative test also used by the Ninth Circuit, a preliminary injunction may be granted if the moving party can demonstrate "either (1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and the balance of hardships tipping in their favor." *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991) (citation omitted).

Accordingly, preliminary equitable relief is appropriate if plaintiffs demonstrate a likelihood of success on the merits and the possibility of irreparable injury, or the existence of serious questions on the merits and a balance of hardships tipping in their favor. *Nat'l Wildlife Fed'n v. Burlington N.R.R.*, 23 F.3d 1508, 1510 (9th Cir. 1994). "'These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases.'" *Hunt v. Nat'l Broad. Co.*, 872 F.2d 289, 293 (9th Cir. 1989) (quoting *United States v. Odessa Union Warehouse Co-op*, 833 F. 2d 172, 174 (9th Cir. 1987)); *see also United States v. Nutri-Ecology, Inc.*, 982 F.2d 394, 397 (9th Cir. 1992).

While irreparable harm is not presumed to result from a violation of NEPA, courts recognize that "[e]nvironmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, i.e., irreparable." *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 545 (1987). Consequently, where a plaintiff has shown that environmental injury is "sufficiently likely . . . the balance of the harms will usually favor the issuance of an injunction to protect the environment." *Id.*; *Nat'l Wildlife Fed'n*, 23 F.3d at 1510.

**ANALYSIS**

    **A.**    **Motion for Preliminary Injunction**

In light of the great deference afforded to the process invoked by an agency in presenting an EIS, this court concluded at plaintiffs' Temporary Restraining Order hearing that neither the seriousness of the questions raised nor the likelihood of plaintiffs' success regarding their challenge to the EIS was sufficient to warrant the extraordinary relief being sought.

In support of plaintiffs' motion seeking the issuance of a preliminary injunction, plaintiffs renewed their arguments pertaining to the Service's alleged over-reliance upon the habitat model known as the DecAID model (adopted from a program titled the "Decayed Wood Advisor for Managing Snags, Partially Dead Trees, and Down Wood for Biodiversity in Forests of Washington and Oregon," hereinafter referred to as DecAID). Plaintiffs contend that DecAID is inapplicable to post-fire projects, and that defendant's reliance upon that tool, with its limitations and inapplicability to post-fire environments, was arbitrary and capricious.

Although plaintiffs raised several issues in this litigation, their assertion that the Service's adoption of an FEIS that relies upon DecAID was arbitrary and capricious was emphasized, and most closely approached establishing the requisite "serious questions" on the merits that, with a showing of the balance of hardships tipping in their favor, would have compelled this court to issue a preliminary injunction. Plaintiffs' contentions that, in sum, "the choice of DecAID as a tool to determine snag retention levels sufficient for [Primary Cavity Excavator] MIS is manifestly unreasonable due precisely to its acknowledged limitations," Plaintiffs Reply Memorandum at 12, are well-argued but fall short of establishing a strong likelihood of success on the merits.

Judge Hogan addressed this precise issue when he denied a Motion for Temporary Restraining Order and Preliminary Injunction in *Oregon Fund*. As here, the plaintiffs in *Oregon Fund* contended that the Service violated NFMA when the Service failed to ensure viable populations of MIS. Pls. Mo. For T.R.O. and Preliminary Injunction in *Oregon Fund*, Civ. No. 04-593-CO, at 2. This court has examined the briefing submitted in the respective cases. Judge Hogan's analysis on the question of whether the Service violated NFMA by failing to ensure viable populations of MIS because the Service improperly relied on the management tool DecAID to ensure viable populations is relevant and applicable.

Judge Hogan noted that DecAID is used by the Service as "an advisory tool developed to help wildlife managers evaluate the effects of forest conditions (existing or resulting from proposed activities) on wildlife that use snags and down wood." Order Denying TRO/Preliminary Injunction in *Oregon Fund*, 04-593-CO, at 3 n.1.

Although the plaintiffs in *Oregon Fund* referred in part, as plaintiffs do in this case, to representations made by DecAID's authors expressly stating that DecAID is not a population viability analysis and argue that DecAID was inappropriately relied upon by the Service, the court in *Oregon Fund* ruled that it was "likely to ultimately conclude that the Service did not violate NFMA in this regard" because the Service:

> used DecAID to estimate "tolerance levels" for various snag densities and sizes, and to evaluate the effects of alternatives. Based on this analysis, the Service concluded that the selected alternative would ensure viability of MIS species. This conclusion did not come from DecAID. The court is deferential to an agency's scientific conclusions, such as whether habitat with certain conditions will support viable populations. *See Arizona Cattle Growers' Ass'n v. United States Fish and Wildlife Svc.*, 273 F.3d 1229, 1236 (9th Cir. 2001). The Service can meet its obligation to ensure viable populations by requiring that the decision area contain sufficient habitat for survival.

*Id*. at 3-4. The ruling also concluded that the Service did not use DecAID to predict population viability. *Id*. at 4 n.3.

That deference to an agency's scientific conclusions and the subsequent judicial analysis are equally applicable here. This court has examined the record, counsel's arguments, briefing, authorities cited, and the supplemental submissions filed in this case and in *Oregon Fund*. The legal challenge in each case to the Service's reliance upon DecAID is essentially identical, and the court's analysis and reasoning in *Oregon Fund* is sound and has been subsequently affirmed by the Ninth Circuit. *See Oregon Natural Resources Council Fund v. Goodman*, 110 Fed. Appx. 31, 2004 WL 2203752 (9th Cir. 2004).

For the reasons presented in *Oregon Fund* and the additional reasons summarized below, this court concludes that plaintiffs arguments regarding the Service's reliance upon

PAGE 9 - OPINION AND ORDER

DecAID were insufficient to warrant the extraordinary relief gained through the issuance of a preliminary injunction.

As noted above, plaintiffs' multi-pronged attack upon the Service's use of DecAID in this case incorporates allegations that the Service misapplied DecAID and failed to disclose DecAID's limitations, thereby violating NEPA's requirement that agencies insure scientific integrity in their decision-making. *See* 40 C.F.R. § 1502.24 ("Agencies shall insure the professional integrity, including scientific integrity, of the discussions and analyses in environmental impact statements").

This court concludes that plaintiffs failed to raise sufficient serious questions or an adequate likelihood of success about the Monument FEIS's disclosures regarding DecAID to warrant a preliminary injunction on these grounds. Within the text of the FEIS it was expressly "noted that DecAID does not model biological potential or population viability. There is no direct relationship between tolerances, snag densities and sizes in DecAID data; and snag densities and sizes measuring potential population levels, as discussed in the Forest Plan." Def. Ex. 1 (hereinafter FEIS), Vol. 1 at 187. The FEIS also acknowledged that:

> DecAID's usefulness is dependent upon the specificity and magnitude of the data upon which it draws conclusions. In this analysis, limitations in terms of scale as well as habitat and structure specific limitations related to available science should be recognized. However, DecAID still provides the most comprehensive description of deadwood habitats in the states of Oregon and Washington. DecAID also supplies a good reference for habitat conditions and the level that species needs are met in the project area. DecAID was used to describe habitat conditions for a variety of primary cavity excavator species and provided a course scale of comparison for effects of activities proposed.

*Id*.

Similarly, the FEIS noted that DecAID fails to provide wildlife use information for post-fire habitats for certain species, rendering "effects discussions" more "qualitative than quantitative." *Id.* at 192. These disclosures precluded a determination that plaintiffs' likelihood of success on the merits was sufficient to warrant a preliminary injunction.

Plaintiffs' more detailed challenges to how DecAID was used and relied upon in the Monument Fire Recovery Plan will be addressed more fully in the ruling on the merits of the case. None of the specific arguments compelled the issuance of the extraordinary relief sought in plaintiffs' pending motion.

Several other major issues were raised in support of plaintiffs' Motion for Preliminary Injunction and, although plaintiffs' new motion to withdraw certain claims may serve to moot further analysis of some of these, they were presented and considered as grounds for enjoining the Monument Fire recovery logging.

In another challenge that the Service failed to insure the professional and scientific integrity of the discussions and analyses in environmental impact statements as required by NEPA, *per* 40 C.F.R. § 1502.24, plaintiffs argued that the Service failed to disclose the information it generated from the Scott Mortality Guidelines to determine which trees over 21" in diameter at breast height (dbh) will die in the planning area, and thus be subject to removal by logging. Plaintiffs argued that the Service should have disclosed the actual numbers of dead or dying trees determined by the Guidelines in the FEIS. Plaintiffs requested this information in a Freedom of Information Act request, and were informed that no such information existed. Declaration of Susan Jane Brown (Brown Dec.) Ex. L at 4.

This court determined that the Service's use of the Guidelines and its methodology in that use (and incorporation of field studies and reviews to amend and tailor the Guidelines) would likely be construed as reasonable. Consequently, plaintiffs' request for tree-by-tree documentation failed to raise serious questions about the Service's mortality determination for the Monument project.

Plaintiffs also sought an injunction on grounds that the Service violated NEPA by failing to disclose, in the FEIS, the science that counsels for and against the agency's proposal that removing large trees – snags – from the planning area will reduce the risk of future wildfire. Plaintiffs asserted that the FEIS lacks reasoned discussion of major scientific objections questioning whether removing large trees (those larger than 10" dbh) from the landscape reduces or increases future fire risk.

The FEIS acknowledged that during public scoping, one of the issues that arose and was evaluated by the FEIS interdisciplinary team (ID Team) was the "scientific controversy relevant to the benefits of using salvage harvest to reduce fuels in order to reduce potential effects of future fire events." FEIS, Vol. 1, at 23. The FEIS recognized that "[s]ome science advocates a passive approach to fuels management in burned areas, by recommending that natural processes are best for management of fuels. Others suggest that salvage harvest is the bst way to reduce the potential for another cycle of heavy fuel accumulations." *Id*.

The ID Team disclosed that it considered the 1995 Beschta Report, and addressed its advocacy for passive management of post-fire environments. *Id*. at 286. An exclusive critique of just the Beschta Report, however, has been recognized as insufficient and "does not explain why the Forest Service failed to disclose or address any contrary scientific

opinion in the EIS." *Sierra Club v. Bosworth*, 199 F. Supp.2d 971, 981 (N.D. Cal. 2002). In finding the EIS in that case inadequate, the court held that the Service violated NEPA when it failed to "disclose and analyze scientific opinion in support of and in opposition to the conclusion that the . . . project will reduce the intensity of future wildfires in the project area." *Id*. at 981.

However, the FEIS in this case also referred to "Environmental Effects of Postfire Logging: Literature Review and Annotated Bibliography" by McIver and Starr, 2000, which interpreted twenty-one post-fire logging studies. FEIS, Vol. 1 at 286. The FEIS goes on to apply the significant issues raised in the Beschta Report to the Monument Fire Recovery Project. *Id*. at 287-93. The Service also refers to the publication at Appendix F of the FEIS of eleven public comments received by the Service concerning the preliminary EIS, and the ID Team's analysis of these comments.

Plaintiffs' contention that the statutory requirement for disclosure and analysis of scientific opinion in this regard is unmet is close. However, the debate concerning the degrees to which these opposing scientific views were adequately disclosed and discussed fell short of triggering the extraordinary relief of an injunction.

Plaintiffs' challenge regarding whether the FEIS adequately analyzed the cumulative impacts of past, present, and reasonably foreseeable future federal and non-federal actions also failed to trigger an injunction. The FEIS contains multiple passages and specific subsections discussing historical and foreseeable impacts. Chapter Three of the FEIS, titled "Affected Environment and Environmental Consequences," summarizes the physical, biological, social, and economic environments of the project area and the effects of

implementing each of the alternatives developed in the FEIS. FEIS, Vol. 1 at 61. There were sufficient discussions of the cumulative impacts of past, present, and reasonably foreseeable future federal and non-federal actions throughout this Chapter and elsewhere in the FEIS to preclude issuing a preliminary injunction. In Chapter Three alone cumulative impacts discussions were presented pertaining to: forest vegetation, *id*. at 76, 82; fuels and fire management, *id*. at 86, 90-97; sensitive plants, *id*. at 100-04; noxious weeds, *id*. at 107-08; soil, *id*. at 117-126; fish and water quality, *id*. at 141-42; wildlife, *id*. at 210-13, 223-28, 230, 236, 241-43, 253; recreation, *id*. at 257; visuals, *id*. at 259; cultural resources, *id*. at 263-64; range, *id*. at 269; economics, *id*. at 281-82; and roads, *id*. at 284-85.

While plaintiffs argue that these and other citations amount to merely a "list" that is insufficient to meet the requirements of NEPA, *see Muckleshoot Indian Tribe v. United States Forest Service*, 177 F.3d 800, 809-11 (9th Cir. 1999), this court concluded that it was unlikely to find that these discussions were only "very broad and general statements devoid of specific, reasoned conclusions" and, therefore, inadequate under NEPA. *See id*. at 811.

After a thorough scrutiny of these and the other arguments presented by plaintiffs in support of their Motion for a Preliminary Injunction, as well as each of the supplemental submissions made by the parties, this court concluded that plaintiffs lacked a strong likelihood of success on the merits of establishing that the Service failed to meet NEPA's obligations in developing and adopting the FEIS at issue or otherwise showing that it acted arbitrarily, capriciously, and not in accordance with law. 5 U.S.C. § 706(2)(A). Accordingly, plaintiffs' motion is denied.

    **B.**    **Motion to Consolidate**

Plaintiffs now move to consolidate the previously pending motion for a preliminary injunction with a determination of this action on the merits pursuant to Federal Rule of Civil Procedure 65(a)(2). Plaintiffs seek a declaratory judgment regarding the legality of the Monument Fire Recovery Plan FEIS. The federal defendant opposes this motion.

After reviewing plaintiffs' motion and the posture of this action after providing final adjudication of the motion for preliminary injunction, this court concludes that plaintiffs' Motion to Consolidate should be granted in part as follows. By separate Order, this action will be transferred from the docket of Magistrate Judge Hubel to the docket of this court. The parties will then be permitted to submit a brief summarizing the remaining claims in this litigation and addressing the merits of plaintiffs' request for a declaratory judgment. These briefs must be filed by July 8, 2005. Sur-Reply briefs may be filed by July 22, 2005.

**C.     Motion to Dismiss Plaintiffs' Second, Fifth, Sixth and Ninth Claims**

Plaintiffs also move to dismiss without prejudice plaintiffs' Second, Fifth, Sixth and Ninth Claims. This motion is granted.

**CONCLUSION**

For the reasons stated above, plaintiffs' Motion for a Preliminary Injunction (Doc. # 10) is denied. Plaintiffs' Motion to Consolidate their Motion for a Preliminary Injunction with the Merits Pursuant to Federal Rule of Civil Procedure 65(a)(2) and to Voluntarily

///

///

Dismiss Without Prejudice their Second, Fifth, Sixth and Ninth Claims (Doc. # 87) is granted in part in accordance with the revised briefing schedule provided herein.

IT IS SO ORDERED.

Dated this 25 day of May, 2005.

                                                  /s/Ancer L.Haggerty
                                                      Ancer L. Haggerty
                                              United States District Judge